1    Craig J. Mariam (SBN: 225280)
     cmariam@gordonrees.com
2    Kirstie M. Simmerman (SBN: 260049)
     ksimmerman@gordonrees.com
3    GORDON & REES LLP
     633 W. 5th Street, 52nd Floor
4    Los Angeles, CA  90071
     Telephone:  (213) 576-5000
5    Facsimile:   (877) 306-0043

6    Attorneys for defendants
     North American Asset Services, LLC d/b/a Frontier Financial
7    Group

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10   ANTHONY FELIX, an individual; on          ) CASE NO.: 2:12-cv-03718-JFW-AN
     behalf of himself and all others similarly )
11   situated,                                   ) *The Honorable John F. Walter*
                                                 )
12                        Plaintiff,             ) **DEFENDANT NORTH**
                                                 ) **AMERICAN ASSET SERVICES,**
13            vs.                                 ) **LLC'S OPPOSITION TO**
                                                 ) **PLAINTIFF'S MOTION FOR**
14   NORTH AMERICAN ASSET SERVICES, ) **CLASS CERTIFICATION**
     LLC, a Nevada Limited Liability Company )
15   and VEGALO, LLC, a Nevada Limited       ) [Filed Concurrently With
     Liability Company d/b/a FRONTIER        ) Declaration of Craig J. Mariam;
16   FINANCIAL GROUP, a Fictitious Business ) Declaration of Jeffrey Duncan;
     Entity; MARTIN G. MAZZARA,             ) Evidentiary Objections to the
17   SALVATORE MAZZARA, and PAULA          ) Declaration of William F. Horn;
     ENGELBRECHT, Individually and in Their ) Evidentiary Objections to the
18   Official Capacities as Owners, Officers, and ) Declaration of Anthony Felix; and
     Managing Members of NORTH             ) Proposed Order]
19   AMERICAN ASSET SERVICES, LLC and )
     VEGALO, LLC d/b/a FRONTIER            ) Date:  September 10, 2012
20   FINANCIAL GROUP; and JOHN AND        ) Time: 1:30 p.m.
     JANE DOES NUMBERS 1 THROUGH 25, ) Courtroom 16
21                                               )
                          Defendants.            ) Pretrial Conf. Date:  May 10, 2013
22                                               ) Trial Date:          May 28, 2013
                                                 )
23                                               ) District Judge:  Hon. John F. Walter
                                                 ) Magistrate Judge: Hon. Arthur
24                                               ) Nakazato
                                                 )
25                                               ) Complaint Filed:  April 30, 2012
                                                 )
26   _____)

27   / / /

28   / / /

---

DEFENDANT'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION
CASE NO.: 2:12-cv-03718-JFW-AN

1    TO THIS HONORABLE COURT, TO ALL PARTIES AND THEIR

2    ATTORNEYS OF RECORD:

3    PLEASE TAKE NOTICE that defendant North American Asset Services,

4    LLC dba Frontier Financial Group hereby respectfully submits to this Honorable

5    Court this instant opposition to plaintiff's motion for class certification.

6                                            Respectfully submitted,

7

8    Dated:  August 20, 2012                 GORDON & REES LLP

9

10                                           By:  /s/ Craig J. Mariam
                                                  Craig J. Mariam
11                                                Kirstie M. Simmerman
                                                  Attorneys for defendant
12                                                North American Asset Services
                                                  LLC d/b/a Frontier Financial
13                                                Group

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION
CASE NO.: 2:12-cv-03718-JFW-AN

# TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION ................................................................................1

II.   STATEMENT OF FACTS .................................................................2

    A.   North American Asset Services, LLC ...................................3

    B.   Plaintiff Anthony Felix .........................................................4

    C.   Plaintiff's Class Claims........................................................5

III.  ISSUES PRESENTED ........................................................................7

IV.  LEGAL STANDARD GOVERNING CLASS CERTIFICATION ...............7

V.   ARGUMENT ....................................................................................10

    A.   Plaintiff Lacks Standing to Represent Either the FDCPA/RFDCPA Class or the TCPA Class. ...................................10

        1.   Plaintiff Is Not A "Consumer" Under the FDCPA or "Debtor" Under the RFDCPA. ...................................................11

        2.   The First Amended Complaint Does Not Allege NAAS Committed Any Actionable Violations of The TCPA Against Plaintiff......................................................12

    B.   Plaintiff Cannot Maintain a Class Action for Violations of the FDCPA or RFDCPA Because He Has Not Met the Numerosity Requirement. ........................................................15

    C.   Plaintiff Cannot Maintain a Class Action for Violations of the FDCPA, RFDCPA or TCPA Because Individualized Issues Predominate. ........................................................................16

    D.   Plaintiff Cannot Maintain a Class Action for Violations of the TCPA Because the Individualized Issue of Consent Predominates. ......................................................................20

        1.   The TCPA expressly provides an exception for express consent. ...............................................................20

        2.   Courts usually decline to certify TCPA class actions because of the individualized issue of consent.........................21

    E.   There Is No Justification for a Class Action in this Case..................23

VI.  CONCLUSION .................................................................................24

# TABLE OF AUTHORITIES

**PAGE**

## Cases

*Amchem Prods., Inc. v. Windsor,*
   521 U.S. 591 (1977) ...................................................................................8, 23

*Anderson v. AFNI, Inc.,*
   2011 U.S. Dist. LEXIS 51368 (E.D. Pa. May 11, 2011) ....................................13

*AT&T Mobility LLC v. Concepcion,*
   __ U.S. __, 131 S. Ct. 1740 (2011) ..................................................................18

*CE Design, Ltd. v. Prism Bus. Media, Inc.,*
   606 F.3d 443 (7th Cir. 2010)......................................................................14, 20

*Cellco P'ship v. Dealers Warranty, LLC,*
   2010 U.S. Dist. LEXIS 106719 (D.N.J. 2010) ..................................................19

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,*
   467 U.S. 837 (1984). ........................................................................................14

*Clark v. Watchie,*
   513 F.2d 994 (9th Cir. 1975)............................................................................17

*Coopers & Lybrand v. Livesay,*
   437 U.S. 463 (1978) ...........................................................................................8

*Cruz v. Dollar Tree Stores, Inc.,*
   2011 U.S. Dist. LEXIS 73938 (N.D. Cal. 2011) .................................................8

*Demarco v. Edens,*
   390 F.2d 836 (2d Cir. 1968)..............................................................................16

*Discovery House, Inc. v. Consol. City of Indianapolis,*
   319 F.3d 277 (7th Cir. 2003)............................................................................10

*Doninger v. Pacific Northwest Bell, Inc.,*
   564 F.2d 1304 (9th Cir. 1977) ............................................................................8

*Eisen v. Carlisle & Jacquelin,*
   417 U.S. 156 (1974) ...........................................................................................8

*Ellis v. Costco Wholesale Corp.,*
   657 F.3d 970 (9th Cir. 2011).............................................................................8

*Gillibeau v. City of Richmond,*
   417 F.2d 426 (9th Cir. 1969).............................................................................8

*Gonzalez v. Citigroup, Inc.,*
   2011 U.S. Dist. LEXIS 105992 (E.D. Cal. 2011),.............................................18

*Gutierrez v. Barclays Group,*
   2011 U.S. Dist. LEXIS 12546 (S.D. Cal. Feb. 9, 2011) ...................................19

*Hanni v. Am. Airlines, Inc.,*
   2010 U.S. Dist. LEXIS 3410 (N.D. Cal. Jan. 15, 2010) ....................................17

# TABLE OF AUTHORITIES

**PAGE**

*Hanon v. Dataproducts Corp.,*
976 F.2d 497 (9th Cir. 1992)........................................................17

*Hicks v. Client Servs.,*
2008 U.S. Dist. LEXIS 101129 (S.D. Fla. Dec. 10, 2008)..................22

*Hosseinzadeh v. M.R.S. Assocs.,*
387 F.Supp.2d 1104 (C.D. Cal. 2005) ........................................11

*Huntley v. Law Office of Richard Clark, PLLC,*
262 F.R.D. 203 (E.D.N.Y. 2009). .............................................15

*In re Folding Carton Antitrust Litigation,*
75 F.R.D. 727 (N.D. Ill. 1977)..................................................23

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA,*
_ U.S. _, 130 S. Ct. 1605 (2010)..............................................11

*Jones v. E*Trade Mortg. Corp.,*
2006 U.S. Dist. LEXIS 9566, 2006 WL 581257 (S.D.Cal. 2006)........17

*Kopff v. World Research Group, LLC,*
568 F. Supp. 2d 39 (D.D.C. 2008) ............................................19

*Leyse v. Bank of America, Nat'l Assoc.,*
2010 U.S. Dist. LEXIS 58461 (S.D.N.Y. 2010)....................16, 19, 23

*Mansfield v. Midland Funding, LLC,*
2011 U.S. Dist. LEXIS 34102 (S.D. Cal. 2011) ...........................10

*Moltz v. Firstsource Advantage, LLC,*
2011 U.S. Dist. LEXIS 85196 (W.D. N.Y. Aug. 1 2011) .............18, 21

*Nelsen v. King Cnty.,*
895 F.2d 1248 (9th Cir. 1990)..................................................10

*Reese v. Arrow Fin. Servs., LLC,*
202 F.R.D. 83 (D. Conn. 2001)................................................16

*Rivas v. Receivables Performance Mgmt., LLC,*
2009 U.S. Dist. LEXIS 129378 (S.D. Fla. 2009) .........................21

*Satterfield v. Simon & Schuster, Inc.,*
569 F.3d 946 (9th Cir. 2009)...................................................14

*Summers v. Earth Island Inst.,*
129 S. Ct. 1148 (2008) ..........................................................10

*Tourgeman v. Collin Fin. Servs.,*
2012 U.S. Dist. LEXIS 54036 (S.D. Cal. 2012) ..........................10

*Vigus v. Southern Illinois Riverboat/Casino Cruises, Inc.,*
274 F.R.D. 229 (S.D. Ill. 2011).................................................22

# TABLE OF AUTHORITIES

**PAGE**

*Wal-Mart Stores, Inc. v. Dukes, et al., _U.S._,*
   131 S. Ct. 2541 (June 20, 2011).................................................................9, 16

*Worsham v. Accounts Receivable Management, Inc.,*
   2011 U.S. Dist. LEXIS 134870 (D. Md. Nov. 22, 2011) ..............................12, 13

**Statutes**

15 U.S.C. section 1692a(3).........................................................................11

15 U.S.C. section 1692b.............................................................................12

15 U.S.C. section 1692b(1) ........................................................................12

15 U.S.C. section 1692b(2) ........................................................................12

15 U.S.C. section 1692d(6) ...........................................................2, 6, 11, 12

15 U.S.C. section 1692e(10)...........................................................2, 6, 11

15 U.S.C. section 1692e(11)........................................................2, 6, 11, 17

15 U.S.C. section 1692k(a)..........................................................................24

15 U.S.C. section 1692k(a)(2)(B ..................................................................24

28 U.S.C. section 2342 ...............................................................................13

28 U.S.C. section 2342(1) ..........................................................................14

47 U.S.C. section 227(a)(1)(A) .....................................................................4

47 U.S.C. section 227(a)(1)(B).......................................................................4

47 U.S.C. section 227(b)(1)(A) ...................................................................21

47 U.S.C. section 227(b)(1)(A)(iii) ..............................................................19

47 U.S.C. section 227(b)(1)(A)(iii) .................................................................2

47 U.S.C. section 227(b)(1)(B) ....................................................................13

47 U.S.C. section 227(b)(2).........................................................................14

47 U.S.C. section 227(b)(2)(B) ....................................................................13

47 U.S.C. section 227(b)(2)(B)(1)(B) ...........................................................13

47 U.S.C. section 405(a).............................................................................14

California Civil Code section 1788 ................................................................2

California Civil Code section 1788.11 ............................................................2

California Civil Code section 1788.11(b) .......................................................6

# TABLE OF AUTHORITIES

**PAGE**

California Civil Code section 1788.17 ......................................................................6

California Civil Code section 1788.2(h) ................................................................11

**Rules**

Federal Rules of Civil Procedure rule 23 ...................................................1, 8, 9, 15

Federal Rules of Civil Procedure rule 23(a).................................1, 7, 15, 16, 22, 24

Federal Rules of Civil Procedure rule 23(b)...............................................................7

Federal Rules of Civil Procedure rule 23(b)(1)...............................................1, 7, 24

Federal Rules of Civil Procedure rule 23(b)(2)...............................................1, 7, 24

Federal Rules of Civil Procedure rule 23(b)(3).................................1, 7, 8, 9, 22, 24

**Regulations**

47 C.F.R. section 64.1200(a)(2)(iii) .....................................................................13

47 C.F.R. section 64.1200(a)(2)(iii)-(iv) ..............................................................13

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant North American Asset Services, LLC dba Frontier Financial Group ("NAAS") respectfully requests that the Court deny plaintiff's Motion for Class Certification on the grounds that this action does not meet the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(1), (b)(2), or (b)(3).

## I.   INTRODUCTION

Plaintiff's claims cannot and should not be resolved on a class-wide basis. Setting aside the putative class members that would each have individualized issues to resolve, the named plaintiff (and putative class representative) fails to meet his own class definitions[1], in the process (1) showing that he lacks standing as an adequate class representative and (2) highlighting the fact that significant individualized issues will predominate over any class issues.

With respect to his claims arising under the Telephone Communications Privacy Act ("TCPA"), plaintiff Anthony Felix alleges he was contacted on his residential and cellular telephones in connection with a debt he incurred from an unknown source. *See* First Amended Complaint ("FAC") at ¶¶ 30-32. However, it does not appear that Mr. Felix was ever contacted on a cellular telephone, and he was *not* contacted in connection with any debt he personally incurred – rather, he was contacted in an attempt to locate a third-party debtor. Fundamentally, plaintiff lacks standing to bring any of the claims in the operative complaint.

Even assuming plaintiff could overcome his lack of standing (just one of the issues relevant to the *adequacy, commonality*, and *typicality* prongs of the Rule 23 analysis), class treatment is still inappropriate. For each of the proposed classes, individualized questions predominate – not the least of which includes, under the TCPA, whether "prior express consent" was provided by each plaintiff. Similarly, under the Fair Debt Collections Practices Act ("FDCPA"), there are individualized

---

[1] As explained herein, the class definitions *themselves* demonstrate a fundamental misunderstanding of the law on point.  For example, automated calls to residential or landline telephones by debt collectors are not prohibited by the Telephone Communications Privacy Act.

1   issues as to whether the call was the first contact by NAAS or a subsequent contact

2   and whether the call was to a debtor or to a non-debtor reference that will require

3   unique analyses. The answer to each of these questions will determine whether a

4   putative class member even has a viable claim against NAAS, let alone whether

5   any individualized defense applies. Because these threshold requirements for

6   justifying class treatment cannot be met, plaintiff's motion should be denied.

7                     **II.    STATEMENT OF FACTS**

8           NAAS is in the business of collecting debts for client creditors. Plaintiff

9   Anthony Felix has filed the instant complaint seeking to recover damages and to

10  certify a class action lawsuit under two federal consumer protection statutes and a

11  state consumer protection statute as the result of telephone calls allegedly placed to

12  his residential and cellular telephones. By his complaint, plaintiff requests this

13  Court certify two classes: the first, comprised of California residents who received

14  automated voicemails and messages in violation of the FDCPA (15 U.S.C.

15  § 1692d(6) and e(10) and (11)) and the Rosenthal Fair Debt Collection Practices

16  Act (Cal. Civ. Code §§  1788, *et seq.*); and the second, a nationwide class of

17  plaintiffs who received debt collection calls from NAAS in purported violation of

18  the TCPA (47 U.S.C. § 227(b)(1)(A)(iii)). *See* FAC at ¶¶ 91-92.

19          However, these claims in the debt-collection context, by their very nature,

20  are not appropriate for class treatment. As it relates to this lawsuit and plaintiff's

21  specific claims, the FDCPA and RFDCPA prohibit telephone calls to consumers in

22  connection with the collection of a debt without identifying that the caller is a debt

23  collector and the information gathered will be used in connection with collection of

24  a debt. *See* 15 U.S.C. § 1692d(6) and Cal. Civ. Code § 1788.11. The prosecution

25  and defense of these claims will require individualized inquiries (and an extensive

26  manual review and trial of each putative plaintiff's file) regarding, *inter alia*, the

27  content of the alleged calls, if any, whether each call was a first communication

28  under the Act, and what information was provided to the debt collector by the

1  creditor. Without this individualized inquiry, there is no way to determine whether
2  a violation of the Act(s) for any particular consumer exists.

3         Similarly, the TCPA prohibits automated dialing of cellular telephones
4  without prior consent. In the context of debt-collection efforts, the issue of prior
5  consent requires highly individualized inquiries of fact and law that make class
6  treatment impossible. Individualized inquiries will also be necessary regarding
7  whether the phone number called belonged to a cellular telephone or residential
8  telephone at the time the call was placed; whether the phone numbers at issue
9  *currently* belong to a cellular telephone or residential telephone; and whether the
10 phone numbers at issue were transferred from a residential line to a cellular line at
11 any time.

12        Moreover, plaintiff fails to qualify for either of the classes he purports to
13 represent. As discussed in more detail below, Mr. Felix was contacted on his
14 *residential* telephone in an attempt to locate a third-party debtor. *See* Declaration
15 of Jeffrey Duncan ("Duncan Decl.") at ¶ 7. NAAS records reveal that he was never
16 contacted on a cellular telephone, nor was he contacted in connection with any
17 debt personally incurred. Duncan Decl. at ¶ 8. As the FDCPA and RFDCPA are
18 aimed at protecting the rights of consumers who have personally incurred debts,
19 and the TCPA has carved out an exception for phone calls to residential phones,
20 Mr. Felix fails to state a viable claim on his own behalf; this lack of standing is
21 also detrimental to his ability to represent the proposed classes. Thus, the proposed
22 second class similarly should not be certified.

23 **A.     North American Asset Services, LLC**

24        NAAS is a debt-collection agency that works on behalf of its creditor clients
25 to resolve overdue debts. Duncan Decl. at ¶ 3. NAAS employees place telephone
26 calls to debtors and work with the debtors to resolve outstanding debts. *Id.*, ¶ 3. At
27 / / /
28 / / /

times, NAAS uses automated telephone dialing systems to contact debtors[2], and NAAS also places non-automated (i.e. manual) calls to debtors. *Id.*, ¶ 3. The determination of whether and how to use automated telephone dialing systems to contact debtors varies depending on several factors, including a particular debtor's account, results of prior attempts to collect on the debt as to a particular debtor, the balance of the account as to a particular debtor, the underlying creditor, time period involved as to the underlying debt, local and federal regulations, and decisions made by NAAS local offices and personnel. *Id.*, ¶ 4. Information regarding debtors is received by NAAS from the creditors themselves. *Id.*, ¶ 5. This information includes the debtor's contact information, the amount of the outstanding debt, how the debt was incurred, listed references and their contact information, and information regarding preferred methods of contact. *Id.*

On the issue of prior express consent as is required by law in order to contact a particular debtor's cell phone number, certain individualized instances of applicable consent are provided to the underlying creditor through the debt *application* process, certain individualized instances of consent are provided to the debt collector *by the individual debtor* during the debt *collection* process, and certain individualized instances of consent are provided *by an agent* of the individual debtor during the debt *collection* process. *Id.*, ¶ 6.

**B.   Plaintiff Anthony Felix**

According to plaintiff's complaint, plaintiff Anthony Felix is a California resident. Within one year immediately preceding the filing of the instant complaint, NAAS allegedly placed telephone calls to plaintiff and left "several 'pre-recorded'

---

[2] The TCPA prohibits phone calls made using an automatic telephone dialing system, which is defined as "equipment which has the capacity  - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."  47 U.S.C. § 227 (a)(1)(A), (B).  However, NAAS uses telephones integrated with a predictive dialing system which does not randomly generate numbers to call, as provided in the TCPA definition of an "automatic telephone dialing system."  Rather, the system dials phone numbers from a database of existing telephone numbers.

1  telephonic voice messages" on his residential telephone answering machine ((714)

2  237-xxxx). *See* FAC at ¶ 50. Since amending his complaint, plaintiff now also

3  claims that on "multiple occasions over numerous weeks," NAAS allegedly

4  contacted Mr. Felix on his residential phone ((714) 237-xxxx) *and* cell phone

5  ((714) 658-xxxx) via an automatic telephone dialing system using an artificial or

6  prerecorded voice. *See* FAC at ¶ 78. These calls were allegedly placed in

7  connection with an unidentified debt incurred by Mr. Felix from an unidentified

8  source. *See* FAC at ¶¶ 30-32. Mr. Felix alleges that he did not consent to having his

9  residential phone or cell phone called in connection with any debt.  FAC at ¶ 83.

10        NAAS records show that Mr. Felix was contacted in an attempt to locate a

11  third party who incurred a debt through HSBC. Duncan Decl. at ¶ 7. Records also

12  reflect this number – (714) 237-xxxx – is a residential phone number. *Id.* NAAS

13  does not even have a collection account for Mr. Felix; rather, all phone calls to Mr.

14  Felix were placed, pursuant to applicable FDCPA provisions, for information

15  purposes in connection with the third-party debt. *Id.* Therefore, it is evident that

16  there was no attempt by NAAS to contact Mr. Felix in connection with any debt he

17  incurred. Moreover, NAAS does not have any account notes or records referencing

18  the (714) 658-xxxx phone number, let alone call logs evidencing telephone calls to

19  Mr. Felix's alleged cellular telephone. Duncan Decl. at ¶ 8. According to NAAS

20  records, NAAS was never able to speak to Mr. Felix.  *Id.*

21  **C.    Plaintiff's Class Claims**

22        Plaintiff seeks to represent two separate classes of individuals allegedly

23  similarly situated to plaintiff. This first class consists of:

24        All persons in the state of California for whom [defendant] left an
          automated voicemail or answering machine message…that did not
25        identify defendant by its true company name, or state that the call was
          for collection purposes, made in connection with defendant's attempt
26        to collect a debt, which messages violate the FDCPA and RFDCPA,
          during a period beginning [April 30, 2011] and on May 29, 2012.
27

28

*See* FAC at ¶ 91.[3]

Plaintiff asserts the following questions are common to all members of the first class and justify resolution of these claims on a class-wide basis:

a. Whether NAAS's telephonic voice messages violate 15 U.S.C. §§ 1692d(6), 1692e(10) and 1692e(11); and

b. Whether NAAS's telephonic voice messages violate Cal. Civ. Code §§ 1788.11(b) and 1788.17.

*See* FAC at ¶ 99.

The second class plaintiff seeks to represent consists of:

All persons with addresses in the United States of America, who received a call from [defendant] on their residential or cellular telephone(s), for non-emergency purposes and without the prior express consent of the called party, wherein defendant used an automatic telephone dialing system and/or artificial or prerecorded voices, after [April 30, 2008] and ending on May 29, 2012.

*See* FAC at ¶ 92.

Plaintiff asserts the following questions are common to all members of the second class and justify resolution of these claims on a class-wide basis:

a. Whether NAAS made non-emergency calls without prior express consent to plaintiff and class members' cellular telephones using an automatic telephone dialing system or an artificial or prerecorded voice;

b. Whether NAAS made non-emergency calls without prior express consent to plaintiff and class members' residential telephones using an automatic telephone dialing system or an artificial or prerecorded voice;

c. Whether plaintiff and members of the second class were damaged by NAAS's conduct; and

---

[3] The Motion for Class Certification does not clearly define plaintiff's proposed class(es).

d. Whether NAAS should be enjoined from engaging in such conduct in the future.

*See* FAC at ¶ 100.

Plaintiff estimates each of these potential classes will number in "at least in the thousands." *See* FAC at ¶¶ 87, 89. As explained below, each one of these class members would require an individualized trial on, *inter alia*, issues of standing, *bona fide* error and prior express consent. Further, the class definition (e.g., whether non-emergency calls were made to residential telephones) is not even a violation of the law.

## III.   ISSUES PRESENTED

1. Whether it is proper to certify plaintiff's FDCPA and RFDCPA claim against NAAS under FRCP 23(a) and (b)(1), (b)(2) or (b)(3) in light of the individual fact specific inquiries required to determine issues of prior contacts with each putative class member and bona fide error.

2. Whether it is proper to certify plaintiff's TCPA claim against NAAS under FRCP 23(a) and (b)(1), (b)(2) or (b)(3) in light of the individual fact specific inquiries required to determine issues of "prior express consent" of each putative class member.

## IV.   LEGAL STANDARD GOVERNING CLASS CERTIFICATION

Federal Rule of Civil Procedure 23(a)[4] governs class certification in federal actions and requires an affirmative showing by plaintiff that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. If the requirements of Rule 23(a) are satisfied, the Court must also find that plaintiff has satisfied at least one of the categories of Rule 23(b). Rule 23(b)(3) requires that

---

[4] All future references to "Rules" shall be to the Federal Rules of Civil Procedure.

1   questions of law or fact common to the members of the class predominate over any

2   questions affecting only individual members; among the issues central to the

3   predominance inquiry is "whether the case, if tried, would present intractable

4   management problems." *Cruz v. Dollar Tree Stores, Inc.,* 2011 U.S. Dist. LEXIS

5   73938, *11 (N.D. Cal. 2011). Certification is improper if "the merits of the claim

6   turn on the defendant's individual dealings with each plaintiff."  *See Doninger v.*

7   *Pacific Northwest Bell, Inc.,* 564 F.2d 1304, 1314 (9th Cir. 1977).

8        It is well settled that the party seeking to maintain a class action has the

9   burden of showing that all of the prerequisites to utilizing the class action

10  procedure have been satisfied. *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 617

11  (1977). The Court cannot rely on conclusory allegations which parrot the

12  provisions of Rule 23 to support certification. *Gillibeau v. City of Richmond,* 417

13  F.2d 426, 432 (9th Cir. 1969). Instead, the Court must consider all of the facts and

14  legal issues presented by the plaintiff's claims. *Coopers & Lybrand v. Livesay,* 437

15  U.S. 463 (1978). It is important to note that the particular merits of plaintiff's

16  claims are generally not issues to be considered in ruling on class certification.

17  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 163 (1974). However, the merits may

18  be considered when they overlap with Rule 23 requirements. In particular, the

19  merits of plaintiff's claims are directly relevant to a determination of whether the

20  matters in controversy are primarily individual in character or are susceptible to

21  proof in a class action. *See Ellis v. Costco Wholesale Corp.,* 657 F.3d 970, 981 (9th

22  Cir. 2011).

23       Plaintiff's motion for certification relies on Rule 23(b)(3) and contends that

24  "questions of law or fact common to class members predominate over any

25  questions affecting only individual members" and a class action would be

26  "superior to other available methods for fairly and efficiently adjudicating the

27  controversy." *See* Motion at p. 9, line 25 through p. 10, line 3 and p. 10 lines 13-

28  21. Plaintiff further (incorrectly) contends, "the only individual issue to be

-8-

1  determined in this case, is the identification of the class members, a matter capable

2  of ministerial determination from defendant's own business records." *See* Motion

3  at p. 10, lines 22-24.

4      Just as in the recent *Wal-Mart* Supreme Court decision, one of the issues in

5  this case is *commonality* – the rule requiring a plaintiff to show that "there are

6  questions of law or fact common to the class."  *Wal-Mart Stores, Inc. v. Dukes, et*

7  *al.,* _U.S._, 131 S. Ct. 2541, 2550 (June 20, 2011). *Wal-Mart* held that a class

8  action is "an exception to the usual rule that litigation is conducted by and on

9  behalf of the individual named parties only." *Id*. In order to justify a departure

10  from that rule, "a class representative must be part of the class and 'possess the

11  same interest and suffer the same injury' as the class members." *Id*. However, the

12  issue is not just the ability to raise a common question, as "any competently crafted

13  class complaint literally raises common 'questions.'" *Id.* What matters to class

14  certification is not the raising of common "questions" as much as the raising of

15  common answers apt to drive the resolution of the litigation. *Id.* "Dissimilarities

16  within the proposed class are what have the potential to impede the generation of

17  common answers."  *Id*.

18      As stated in *Wal-Mart*, Rule 23 does not set forth a mere pleading standard.

19  Rather, a party seeking class certification must affirmatively demonstrate his

20  compliance with the rule – in other words, "he must be prepared to prove that there

21  are *in fact* sufficiently numerous parties, common questions of law or fact, etc."

22  *Id.* at p. 2551. Moreover, Rule 23(b)(3)—the section relied upon by plaintiff—

23  requires  that "the questions of law and fact common to class members

24  predominate over any questions affecting only individual members, and that a class

25  action is superior to other available methods for fairly and efficiently adjudicating

26  the controversy."  *Id.* at p. 2558.

27  / / /

28  / / /

## V.   <u>ARGUMENT</u>

Plaintiffs' claims are not susceptible to class treatment because (a) plaintiff lacks standing (and, therefore, the issues of *adequacy, typicality* or *commonality*) to represent either of the purported classes; (b) plaintiff's class(es) fail to meet the numerosity requirement; (c) the individualized issues underlying each of plaintiffs' claims predominate both classes; (d) the individualized issue of consent predominates the TCPA class; and (e) a class action is unnecessary because valid FDCPA and TCPA claims have been—and will continue to be—pursued by individual plaintiffs and trial on the merits of this proposed class action would be unmanageable.

### A.   <u>Plaintiff Lacks Standing to Represent Either the FDCPA/RFDCPA Class or the TCPA Class.</u>

As a fundamental matter, a party must have suffered an injury, or in the case of a suit to enforce statutory rights, must show "[the] statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief" in order to satisfy the Article III standing requirement pursue class claims. *See Summers v. Earth Island Inst.,* 129 S. Ct. 1148, 1148-1149 (2008); *Discovery House, Inc. v. Consol. City of Indianapolis,* 319 F.3d 277, 279 (7th Cir. 2003). Standing is a jurisdictional element that must be satisfied prior to class certification. *Nelsen v. King Cnty.,* 895 F.2d 1248, 1249-1250 (9th Cir. 1990); *Tourgeman v. Collin Fin. Servs.,* 2012 U.S. Dist. LEXIS 54036, *15 (S.D. Cal. 2012).

It is well established that a class action may not proceed when the named class representative lacks standing to pursue the claims in his own right, let alone on behalf of a class. *See Mansfield v. Midland Funding, LLC,* 2011 U.S. Dist. LEXIS 34102, *9-10 (S.D. Cal. 2011) (holding that because the named class representative could not state a claim under the operative complaint, and he was the sole named plaintiff, his lack of standing prevented "his ability to act as class

1    representative, which forecloses class certification.") Such is the case here. As

2    shown in more detail below, plaintiff lacks standing to advance *either* of the class

3    claims asserted in the First Amended Complaint. For that reason alone, plaintiff's

4    Motion for Class Certification should be denied.

5            **1.    Plaintiff Is Not A "Consumer" Under the FDCPA or "Debtor"
                      Under the RFDCPA.**

6

7            Plaintiff lacks standing to represent the FDCPA/RFDPCA class because a

8    plain reading of the statute shows that he does not fall under the class of persons

9    the FDPCA and the RFDCPA are intended to protect. Plaintiff claims there are

10   questions of law and fact common to the class, including whether NAAS violated

11   15 U.S.C. §§ 1692d(6), 1692e(10) or 1692e(11). Section 1692d(6) provides that a

12   debt collector may not place a telephone call in connection with the collection of a

13   debt without meaningful disclosure of the caller's identity. Meanwhile, section

14   1692e(10) prohibits a debt collector from using any false representations or

15   deceptive means to collect any debt or to obtain information concerning a

16   consumer, and section 1692e(11) states that the failure to disclose in the initial oral

17   communication with <u>the consumer</u> that the debt collector is attempting to collect a

18   debt and that any information obtained will be used for that purpose.

19           As plaintiff admits, the clear purpose of the FDCPA (and its California

20   counterpart, the RFDCPA) is to protect consumers. *See* Motion for Class

21   Certification ("Motion") at p. 4, lines 8-10 and p. 6, lines 12-15; *see also Jerman v.*

22   *Carlisle, McNellie, Rini, Kramer & Ulrich LPA,* _ U.S. _, 130 S. Ct. 1605, 1608

23   (2010); *Hosseinzadeh v. M.R.S. Assocs.,* 387 F.Supp.2d 1104, 1117-1118 (C.D.

24   Cal. 2005).  However, a consumer is defined by the FDCPA as "any natural person

25   obligated or allegedly obligated to pay any debt."  15 U.S.C. § 1692a(3). A debtor

26   is defined by the RFDCPA as "a natural person for whom a debt collector seeks to

27   collect a consumer debt which is due and owing or alleged to be due and owing

28   from such person." Cal. Civ. Code § 1788.2(h). Plaintiff does not meet either

1  definition. NAAS attempted to contact plaintiff in an attempt to locate a third-party

2  debtor, not in connection with his own debt. *See* Duncan Decl. at ¶ 7.

3        Not only does plaintiff's status as a non-debtor preclude him from advancing

4  these claimed violations of the FDCPA, other sections of the FDCPA explicitly

5  allow debt collectors like NAAS to contact third parties without revealing their

6  identity or the purpose of the call. Specifically, section 1692b, subdivisions (1) and

7  (2) provide that a debt collector communicating with any person other than the

8  consumer for the purpose of acquiring location information about the consumer

9  shall not reveal the name of his employer unless asked to do so and shall not state

10 that the debtor owes a debt. This is considered an exception to the rule delineated

11 in section 1692d(6). *See Worsham v. Accounts Receivable Management, Inc.,* 2011

12 U.S. Dist. LEXIS 134870, *12 (D. Md. Nov. 22, 2011).[5] Thus, no violation of

13 section 1692d(6) has occurred with respect to plaintiff, and he lacks standing to

14 advance this claim on his own behalf or on behalf of a class.

15        **2.    The First Amended Complaint Does Not Allege NAAS Committed
16                Any Actionable Violations of The TCPA Against Plaintiff.**

17        Plaintiff lacks standing to assert the claimed TCPA violations for two

18 reasons: first, plaintiff's definition of the proposed second TCPA class fails

19 because it includes "violations" which are not violations at all; and second, what

20 remains of plaintiff's claim does not apply to him.

21        The FAC claims that NAAS has violated the TCPA by making phone calls

22 to cellular and residential telephones using an "automatic telephone dialing

23 system" and "an artificial or prerecorded voice" (*see* FAC at ¶¶ 78-79), yet the

24 Federal Communications Commission ("FCC") has determined that it is not a

25

26 _____

   [5] In *Worsham,* the court granted defendant's motion for summary judgment regarding an
27 identical claim, finding that the debt collector's call to plaintiff's house in an attempt to locate
   his sister-in-law, the debtor, was permissible under section 1692b and thus no violation of
28 1692d(6) had occurred.

violation of the TCPA for a debt collector to call a residential telephone. *See* 10 FCC Rcd. 12391, 12400 (Aug. 7, 1995)[6] (holding that debt collection calls were exempt from the prohibitions on prerecorded calls to residences).  The exemption was thereafter codified at 47 C.F.R. § 64.1200(a)(2)(iii)-(iv).

The TCPA allows for the FCC to carve out exemptions to the TCPA provisions. 47 U.S.C. § 227 (b)(2)(B). Pursuant to this authority, the FCC has exempted calls made for a "commercial purpose" that do "not include or introduce an unsolicited advertisement or constitute a telephone solicitation," as well as calls "made to any person with whom the caller has an established business relationship at the time the call is made." 47 C.F.R. § 64.1200(a)(2)(iii)-(iv).  The FCC regulation has been interpreted to specifically exempt "debt collectors" from the prohibition contained in section 227(b)(1)(B).[7] *See Anderson v. AFNI, Inc.*, 2011 U.S. Dist. LEXIS 51368, at *32 (E.D. Pa. May 11, 2011) (holding that the "exemption codified at 47 C.F.R. § 64.1200(a)(2)(iii) applies to calls to non-debtors made purely for the purpose of debt collection.") The court in *Worsham* similarly held that calls made to a residential telephone in connection with the plaintiff's sister-in-law's debt were exempted from the provisions of the TCPA.[8] 2011 U.S. Dist. LEXIS at *23.

The FCC's exemption for residential telephones is binding on this Court. Under the Administrative Orders Review Act, 28 U.S.C. § 2342 (the "Hobbs

---

[6] The Ruling is attached as Exhibit 1 to the Declaration of Craig J. Mariam.

[7] The "commercial purpose" exemption applies to the portion of the TCPA prohibiting prerecorded messages to residential telephone numbers. *See* 47 U.S.C. 227(b)(2)(B) (providing the FCC with the authority to "exempt from the requirements of paragraph (1)(B) of this subsection . . . such classes or categories of calls made for commercial purposes as the Commission determines--(I) will not adversely affect the privacy rights that this section is intended to protect; and (II) do not include the transmission of any unsolicited advertisement...").

[8] Similar to the instant matter, plaintiff in *Worsham* claimed that the defendant, in making prerecorded calls to plaintiff's residence, failed to clearly identify the entity that was responsible for initiating the calls and failed to clearly state the telephone number of the entity responsible for the calls. *Id.* at *12.

1   Act"), federal district courts lack the jurisdictional authority to overrule final

2   agency decisions. *CE Design, Ltd. v. Prism Bus. Media, Inc.,* 606 F.3d 443, 446

3   (7th Cir. 2010). Specifically, the Hobbs Act reserves to the courts of appeals the

4   power "to enjoin, set aside, suspend (in whole or in part), or to determine the

5   validity of" all final FCC orders. *See* 28 U.S.C. § 2342(1); 47 U.S.C. § 402(a).

6   Accordingly, before seeking relief from an appellate court, a party aggrieved by

7   the FCC's final order must petition the FCC for reconsideration. *CE Design, Ltd.,*

8   *supra,* 606 F.3d at p. 446; *see also* 47 U.S.C. § 405(a).

9       Moreover, under the "*Chevron* doctrine," federal administrative agencies are

10   entitled to deference in their interpretation of statutes within their purview. *See*

11   *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837

12   (1984). A court must defer to the agency's interpretation so long as the

13   interpretation "is based on a permissible construction of the statute."  *Chevron,*

14   *supra,* 467 U.S. at p. 843. An agency's interpretation of a statute is permissible,

15   unless "arbitrary, capricious or manifestly contrary to the statute." *Id.* at p. 844.

16   Congress delegated to the FCC the authority to make rules and regulations to

17   implement the TCPA. *See* 47 U.S.C. § 227(b)(2). Accordingly, the FCC is entitled

18   to deference in its interpretation of the TCPA. *See Satterfield v. Simon & Schuster,*

19   *Inc.,* 569 F.3d 946, 952 (9th Cir. 2009).

20       Because the FCC has determined that it is not a violation of the TCPA for

21   debt collectors to call residential telephones, the only TCPA claim left in the FAC

22   is the allegation that NAAS called cellular telephones using these automatic

23   telephone dialing systems and artificial or prerecorded voices. *See* FAC at ¶¶ 78-

24   79. However, as previously stated, plaintiff lacks standing because he was not

25   contacted on a cellular telephone. NAAS records reveal that plaintiff was only

26   contacted on the (714) 658-xxxx number, a telephone number assigned to a

27   residential telephone. *See* Duncan Decl. at ¶ 7. In fact, there is no evidence that

28   / / /

1  plaintiff was ever contacted on his cell phone.[9] Thus, plaintiff does not fall into the

2  class of persons with a right to judicial relief pursuant to the TCPA and there is no

3  nexus between his individual claim and the claims of the class, as required by

4  *Hinman.* Accordingly, Mr. Felix has not met the threshold standing requirement of

5  Article III.

6  **B.   Plaintiff Cannot Maintain a Class Action for Violations of the FDCPA**
7  **or RFDCPA Because He Has Not Met the Numerosity Requirement.**

8          Federal Rule of Civil Procedure 23 requires a plaintiff to show that the

9  putative class "is so numerous that joinder of all members is impracticable." Fed.

10  R. Civ. P. 23(a). The plaintiff cannot establish the numerosity requirement on the

11  strength of bare and speculative allegations. *See Huntley v. Law Office of Richard*

12  *Clark, PLLC*, 262 F.R.D. 203, 205 (E.D.N.Y. 2009). Yet, this is precisely what

13  plaintiff has done in his motion.

14          In the motion for class certification, plaintiff alleges that he has met the

15  *numerosity* prong of Rule 23 because it is "reasonable to infer from [NAAS's] use

16  of predictive dialers that there are more than 40 members of the class" due to the

17  expense of predictive dialer equipment. *See* Motion at p. 8, lines 24-28. In support

18  of this argument, plaintiff cites a 12-year old article from the *Milwaukee Journal*

19  *Sentinel*, which, upon further inspection, pulled this quote from the owner of a

20  third party marketing firm. *See* Motion at p. 8, line 28 through p. 9, line 3, and the

21  attached Declaration of William Horn in support thereof.  This is not sufficient or

22  admissible affirmative evidence on point.

23          As the court in *Huntley* held, wherein plaintiff claimed *numerosity* could be

24  inferred in a FDCPA matter based solely on the fact that defendant was in the debt

25  collection business and had made a debt collection call to plaintiff, "although it is

26

27  [9] Indeed, a review of plaintiff's original complaint as compared to the First Amended Complaint
is revealing.  In the original complaint, plaintiff merely alleged he was contacted on his

28  residential telephone; it was not until a second TCPA class was added that plaintiff first claimed
he was contacted on a telephone number assigned to a cell phone.  *See* Complaint at ¶ 51.

DEFENDANT'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION
CASE NO.: 2:12-cv-03718-JFW-AN

certainly reasonable to assume that [defendant's employee] made hundreds and perhaps thousands of phone calls during her tenure with the Defendant, the Court is unwilling to take the considerable leap that a sufficient number of consumers received calls that violated the FDCPA." *Huntley,* 262 F.R.D. at p. 205. The court stated it could not infer that just because defendant's employee made a threatening phone call to plaintiff, she must have made similar phone calls to other consumers. *Id.,* citing *Demarco v. Edens*, 390 F.2d 836, 845 (2d Cir. 1968) (denying class certification where the evidence of numerosity was purely speculative); *Reese v. Arrow Fin. Servs., LLC*, 202 F.R.D. 83, 90-91 (D. Conn. 2001) (finding that the numerosity requirement was not met by speculative assertion about the number of class members).

The court in *Leyse v. Bank of America, Nat'l Assoc.*, 2010 U.S. Dist. LEXIS 58461 (S.D.N.Y. 2010) similarly denied class certification when it found plaintiff failed to meet the numerosity requirement of Rule 23(a). The court found that the number of members of the putative class, or even an estimation of the number, did not appear in the record, nor did plaintiff offer any evidence of how many debtors allegedly received messages in violation of the FDCPA. *Id.* at * 25. Here, plaintiff has failed to provide *any* estimation based on facts, any declarations from other putative class members, or any other information which would support of finding of numerosity. Thus, this threshold requirement has not been met and plaintiff's motion should be denied.

**C.    Plaintiff Cannot Maintain a Class Action for Violations of the FDCPA, RFDCPA or TCPA Because Individualized Issues Predominate.**

Commonality and typicality are two fundamental requirements to justify class treatment. The Supreme Court in *Wal-Mart* recently clarified that "[c]ommonality requires the plaintiff to demonstrate the class members 'have suffered the same injury.'" *Wal-Mart,* 131 S. Ct. at 2551. The test of typicality, meanwhile, "is whether other members have the same or similar injury, whether

1   the action is based on conduct which is not unique to the named plaintiffs, and

2   whether other class members have bee injured by the same course of conduct."

3   *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992). Here, plaintiff is

4   unable to satisfy either prong, as individualized issues predominate both proposed

5   classes.

6        A class definition is inadequate if "a court must make a determination of the

7   merits of the individual claims to determine whether a person is a member of

8   the class**.**" *Hanni v. Am. Airlines, Inc.*, 2010 U.S. Dist. LEXIS 3410, at *24 (N.D.

9   Cal. Jan. 15, 2010). In fact, several courts have declined to grant class certification

10  when the claims of each putative class member turn on "content determinative"

11  issues. *See Clark v. Watchie*, 513 F.2d 994, 999 (9th Cir. 1975) and *Jones v.*

12  *E\*Trade Mortg. Corp.*, 2006 U.S. Dist. LEXIS 9566, 2006 WL 581257, *3

13  (S.D.Cal. 2006).[10] That is precisely the case in the instant matter.

14       Plaintiff's motion states, in a sweeping fashion, that his claims are typical of

15  the claims of the "Settlement Class" because NAAS left plaintiff and all

16  "Settlement Class Members" at least one pre-recorded telephone voice message

17  and failed to provide meaningful disclosure of the caller's identity. Motion at p. 11,

18  lines 11-14. In asserting this class claim under the FDCPA, plaintiff does not take

19  into account the likelihood that any of the communications which arguably fall

20  within the class definition may not have been the initial contact with the debtor[11],

21  may contain calls to a third-party who has not incurred a debt in an attempt to

22  locate the debtor (as is the case with plaintiff), whether any particular telephone

23

24  [10] In *Clark*, the Ninth Circuit found a suit alleging violations of the Securities Exchange Act
    could not be maintained as a class action because the plaintiff failed to show the alleged
25  misrepresentations or nondisclosures were common to the class.  In *Jones,* Judge Whelan found
    the plaintiffs' claim for violation of TILA based upon oral statements differed from the
26  proposed class and, therefore, the plaintiffs failed to meet the typicality requirement.

27  [11] The FDCPA provides that a disclosure of the debt collector's identity and the purpose of the
    phone call is only required in the initial communication with a debtor. 15 U.S.C. § 1692e(11).
28  Subsequent communications only must convey that the communication is from a debt collector.
    *Id.*

1   number called was a cellular telephone at the time of the alleged call (whether the

2   number had since been "ported" to a cellular telephone), whether the call was

3   automated or manual, or whether the call amounts to any particular violation of

4   either the FDCPA/RFDCPA or TCPA (and each purported violation would require

5   a completely separate and distinct review and analysis). *See* Motion at p. 10, lines

6   22-24. Just as the courts in *Clark* and *Jones* pointed out, because plaintiff's claims

7   are based upon telephonic communications with the putative class members, the

8   facts surrounding each of those communications, and the content of each call, will

9   differ.

10          Further, there will be contractual issues relating to certain creditors.  For

11   example, in *Gonzalez v. Citigroup, Inc.*, 2011 U.S. Dist. LEXIS 105992, *6-7

12   (E.D. Cal. 2011), the court considered the effect of an alleged arbitration

13   agreement in a credit application on the maintenance of a TCPA claim in federal

14   court. After reviewing the facts and agreement in detail, the court ultimately

15   determined that the arbitration agreement did not apply to preclude a TCPA claim

16   in that case. However, the court by no means foreclosed the possibility that an

17   arbitration clause could prohibit a TCPA claim. And recently, the Supreme Court

18   upheld arbitration clauses that effectively prohibited class treatment of claims,

19   *AT&T Mobility LLC v. Concepcion*, __ U.S. __, 131 S. Ct. 1740, 1751 (2011).

20   Given the ubiquity of arbitration clauses in consumer debt contracts, this issue

21   would almost certainly arise among at least some of the members of plaintiff's

22   putative nationwide class.

23          Another individualized issue is the inevitable disagreement between

24   witnesses and documents regarding the debtors' interactions with the debt

25   collector. *See Moltz v. Firstsource Advantage, LLC*, 2011 U.S. Dist. LEXIS 85196,

26   *2-3 (W.D. N.Y. Aug. 1 2011). In *Moltz*, the plaintiff debtor disputed the records

27   held by the defendant debt collector, and particularly how the plaintiff's cell phone

28   number was originally obtained. Based on its business records and the routine

1   business practices of the debt collector and its client, the debt collector asserted
2   that the plaintiff had given his cell phone number during the credit application
3   process. However, the plaintiff disagreed, based on his recollection of those
4   conversations. Given the dispute, the court determined that "whether plaintiffs
5   gave [the creditor] his cellular number is a factual issue that the jury must resolve."
6   *Id.* at *3.

7          Another unique question of law and fact is whether each member of
8   plaintiff's proposed class was an intended recipient of the call and has standing to
9   assert a TCPA claim. The TCPA prohibits calls made without the prior express
10  consent "of the called party." 47 U.S.C. § 227(b)(1)(A)(iii). Several courts have
11  applied a highly fact-intensive inquiry to determine whether a particular plaintiff is
12  a "called party" within the meaning of the TCPA and therefore has standing to
13  claim statutory damages. *See, e.g.*, *Kopff v. World Research Group, LLC*, 568 F.
14  Supp. 2d 39 (D.D.C. 2008); *Leyse v. Bank of America, Nat'l Assoc.*, 2010 U.S.
15  Dist. LEXIS at *4 ("an unintended and incidental recipient of the call" is "not a
16  'called party' within the meaning of [the TCPA]"); *Cellco P'ship v. Dealers*
17  *Warranty, LLC*, 2010 U.S. Dist. LEXIS 106719 (D.N.J. 2010).

18         Yet another issue that frequently arises in TCPA cases is whether a user of a
19  cell phone who is *not* the subscriber may have consented to be contacted at that
20  number. *See, e.g., Gutierrez v. Barclays Group*, 2011 U.S. Dist. LEXIS 12546, *6-
21  8 (S.D. Cal. Feb. 9, 2011). In *Gutierrez*, the court considered whether, under the
22  facts of that case, a husband had implied authority from his wife to consent to
23  receive calls on wife's cell phone. The court concluded that, based on the parties'
24  deposition testimony, the husband did have that implied authority (though it also
25  concluded that the consent was later withdrawn). *Id.*, *8. Even if the "consent of
26  non-subscribers" is not contested in this case, it is certain to be among the
27  menagerie of unmanageable issues in a nationwide class.
28  / / /

1    The above illustrates just a sampling of the individualized issues that would

2  arise in the cases that plaintiffs propose to group in a nation-wide class action

3  against NAAS under the FDCPA, RFDCPA and TCPA. These are not far-fetched

4  hypothetical situations; they are actual situations. Thus, even setting aside the

5  individualized issues raised by this plaintiff in this case, a nation-wide class of

6  individuals would come with their own case-specific legal and factual issues that

7  render class treatment of these claims unmanageable.

8  **D.    Plaintiff Cannot Maintain a Class Action for Violations of the TCPA**
   **Because the Individualized Issue of Consent Predominates.**

9

10    **1.    The TCPA expressly provides an exception for express consent.**

11    Plaintiff's motion for class certification states that "typicality is inherent" in

12  the class definitions set forth in the FAC. Motion at p. 11, lines 25-26. Yet, the

13  TCPA provides an exception to its general rule for those calls made with prior

14  express consent from the debtor to be called at that number. This consent may be

15  obtained in a number of ways, ranging from providing a telephone number on the

16  relevant credit application to telling NAAS it may contact the debtor at a specific

17  telephone number. The determination of whether a given putative class member

18  provided express consent will require an individualized inquiry into the facts

19  surrounding each class member, defeating the purpose of a class action and making

20  this matter unmanageable at trial and therefore inappropriate for class treatment.

21    While Section 227(b)(1)(A) prohibits the use of any automated telephone

22  dialing system to call any telephone number assigned to a cellular telephone

23  service absent the "prior express consent of the called party, " the FCC clarified the

24  "prior express consent" exception of the TCPA through a declaratory ruling. FCC

25  Declaratory Ruling at 559,[12] n. 1, 563. This Court is bound to the FCC's prior

26  rulings. *See CE Design, Ltd. v. Prism Bus. Media, Inc.,* 606 F.3d 443. The FCC

27  explained that a debtor provides "prior express consent" under 47 U.S.C.

28  ─────────────────────
[12] The Ruling is attached as Exhibit 2 to the Declaration of Craig J. Mariam.

§ 227(b)(1)(A) when he or she has previously disclosed his or her cell number to a creditor. To constitute prior express consent, the consumer must have provided that cell number in conjunction with the transactions that resulted in the debt owed. *Id.* at 564-565. "Calls placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call." *Id.* at 565.

Because NAAS is a third party debt collector, it receives accounts from many different clients, not solely from one database. Duncan Decl., ¶ 6. Thus, the inquiry as to whether consent was provided will depend upon a unique analysis of the facts and circumstances underlying each debtor file and each underlying creditor file. Further, consent can be provided to the creditor and/or NAAS through many different methods. If the debtor provided his cell phone number in association with a credit application, he provided consent. If the debtor updated his cell phone number in association with a credit card account that became delinquent, he provided consent. If the debtor forwarded his landline calls to a cell phone, he provided consent. *See* FCC Second Order on Reconsideration, FCC 05-28 (adopted Feb. 10, 2005; released Feb. 18, 2005 "Second Order on Reconsideration"). If the debtor wrote NAAS and provided his cell phone number, he provided consent. There is no end to the factual scenarios underlying the issue of individualized consent.

     **2.**    **Courts usually decline to certify TCPA class actions because of the individualized issue of consent.**

Other courts considering cases similar to this one have concluded that class action treatment is inappropriate. *See, e.g., Rivas v. Receivables Performance Mgmt., LLC*, 2009 U.S. Dist. LEXIS 129378 (S.D. Fla. 2009) (on summary judgment in TCPA case, material issues of fact regarding consent); *Moltz v. Firstsource Advantage, LLL*, 2011 U.S. Dist. LEXIS 85196, *2-3 (W.D.N.Y. Aug. 1, 2011) (on summary judgment, "an issue of material fact exists as to whether Plaintiff provided Defendant with prior express consent to call his cellular

phone."); *Hicks v. Client Servs.*, 2008 U.S. Dist. LEXIS 101129 at *19-21 (S.D. Fla. Dec. 10, 2008) (finding consent as to debt collection calls an individualized issue not appropriate for class certification); *Vigus v. Southern Illinois Riverboat/Casino Cruises, Inc.,* 274 F.R.D. 229 (S.D. Ill. 2011) (class certification was not appropriate in a TCPA cell phone case, citing individualized issues).

Indeed, in *Hicks*, a Florida court held that class certification of a TCPA claim against a debt collector was improper. In that case, the debt collector used an automated telephone dialing system to call cellular telephones, allegedly in violation of the TCPA. Nevertheless, the court held that it was improper for lack of commonality under Rule 23(a) and predominance under Rule 23(b)(3). In *Hicks*, the defendant admitted to leaving somewhere between 1,000 and 10,000 messages for Florida debtors. The defendant contended, correctly, that class treatment was not appropriate in a TCPA case because prior express consent was an essential individual issue. 2008 U.S. Dist. LEXIS 101129 at *18. Applying the standards of Federal Rule of Civil Procedure 23, the court held that the issue of prior express consent would have to be determined on an individual basis at trial which would result in "mini-trials on consent of every class member. *Id.* at *8. Consequently, the court held that class certification of the TCPA claim was improper. Similarly, class certification is improper in the instant case because any attempt to show express consent by the putative class members would degenerate into mini-trials on consent of every class member.

Plaintiff contends in his motion for class certification that after fishing through NAAS's documents, he could construct a class of ideal class members. *See* Motion at p. 10, line 22 through p. 11, line 1. However, plaintiff is restricted to the class allegations that he can present based on his facts. *See Vigus v. Southern Illinois Riverboat/Casino Cruises, Inc.,* 274 F.R.D. 229 (S.D. Ill. 2011). Plaintiff cannot assert the class action he wishes he was representative of – based on the facts of this plaintiff, he does not represent *any* group. However, even if he met his

1    own class definitions, the proposed groups pose so many individualized issues that

2    class treatment would simply be inappropriate.

3    **E.    There Is No Justification for a Class Action in this Case.**

4            The Supreme Court noted that the "policy at the very core of the class action

5    mechanism is to overcome the problem that small recoveries do not provide the

6    incentive for any individual to bring a solo action prosecuting his or her rights. A

7    class action solves this problem by aggregating the relatively paltry potential

8    recoveries into something worth someone's (usually an attorney's) labor." *Amchem*

9    *Prods. v. Windsor*, 521 U.S. 591, 617 (1997), *quoting Mace v. Van Ru Credit*

10   *Corp.*, 109 F.3d 338, 344 (1997). A class action in this case would not serve this

11   policy.

12           The damages available under the FDCPA and TCPA are not

13   inconsequential, as plaintiff's own claims demonstrate. On the face of the FAC,

14   plaintiff is seeking "up to $1,500.00 in damages for each telephone call in violation

15   of the TCPA," *purportedly* tens of thousands of dollars in this particular plaintiff's

16   case. *See* FAC at ¶ 16. Plaintiff claims that class treatment is justified because of

17   the "relatively small amount recoverable by each potential litigant."  Motion at p.

18   13, line 27 through p. 14, line 2, citing *In re Folding Carton Antitrust Litigation,*

19   75 F.R.D. 727 (N.D. Ill. 1977). However, a claim for tens of thousands of dollars is

20   not "relatively small" by any reasonable standard. Contrary to plaintiff's assertion,

21   individual TCPA cases are frequently and eagerly prosecuted by attorneys on

22   behalf of individual consumers. Indeed, a simple internet search just for TCPA

23   attorneys (let alone consumer law attorneys) reveals scores of attorneys willing to

24   take on individual TCPA cases. Moreover, as at least one court has found,

25   individual plaintiffs may stand to make more in FDCPA actions by bringing

26   individual suit. In *Leyse v. Corporate Collection Servs.*, 2006 U.S. Dist. LEXIS

27   67719 (S.D.N.Y. 2006), the court found that were the putative class members to

28   bring suit against defendant individually, statutory damages could amount to $

1   1,000 per person, pursuant to section 1692k(a). But in a class action, each
2   putative class member could only recover their proportion of "the lesser of $
3   500,000 or 1 per centum of the net worth of the debt collector," pursuant to section
4   1692k(a)(2)(B) – depending on the net worth of the defendant, this could result in
5   less than $200 per plaintiff, far less than the $1,000 statutory award. *Id.* At *25, fn.
6   5. Thus, the court held, class treatment was *not* the superior method of adjudicating
7   FDCPA claims. *Id.* Simply, plaintiff cannot demonstrate a justification for class
8   treatment of these claims.

9                        **VI.    CONCLUSION**

10          As individual factual issues regarding consent, prior contact and error must
11   be resolved regarding each putative class member's claim in the instant matter,
12   plaintiff cannot meet the requirements of Rules 23(a), 23(b)(1), (b)(2) or (b)(3),
13   and accordingly, defendant respectfully requests this Court deny certification in
14   this matter.

15                                                Respectfully submitted,

16

17   Dated:  August 20, 2012                      GORDON & REES LLP

18

19                                                By:  /s/ Craig J. Mariam
20                                                     Craig J. Mariam
                                                      Kirstie M. Simmerman
21                                                     Attorneys for defendant
                                                      North American Asset Services,
22                                                     LLC d/b/a Frontier Financial
                                                      Group

23

24

25

26

27

28